UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHNNY LEROY STANLEY,

                Plaintiff,                Case No. 2:15-cv-87

v.                                   Honorable Robert Holmes Bell

KATHY OLSEN, et al.,

                Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Olson and Heyns. The Court will serve the complaint against Defendant Menard.

## Discussion

I.  Factual allegations

Plaintiff Johnny Leroy Stanley, a state prisoner currently confined at the G. Robert Cotton Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Deputy Warden Kathy Olsen, Assistant Resident Unit Supervisor T. Menard, and MDOC Director Daniel Heyns.  Plaintiff alleges that on July 4, 2014, while he was confined at the Kinross Correctional Facility (KCF), he was "jumped" by some other prisoners and suffered a broken right ankle.  Plaintiff was taken to the emergency room, where he was treated and told to stay off of his foot.

Upon his return to KCF, Plaintiff was placed in segregation.  Plaintiff asked Defendant Menard if he could be moved to the gym because he was having a hard time moving around.  Defendant Menard told Plaintiff that he would be kept in segregation until he was transferred.  Plaintiff complained that segregation was not made for disabled prisoners and asked for an emergency transfer to a handicap facility because he would be having surgery soon.  Defendant Menard assured Plaintiff that he would be transferred prior to surgery.  Plaintiff asked if he could have crutches or a wheelchair, but Defendant Menard told Plaintiff that such items were not allowed in segregation.  Plaintiff told Defendant Menard that it was difficult for him to take a shower because he had to hop on one leg.  Defendant Menard responded that he would be transferred soon.

On July 13, 2014, Plaintiff slipped and fell while he was exiting the shower as he was holding on to the swinging steel cage door.  Plaintiff complained of pain in his ankle and health services was notified.  A nurse came to see Plaintiff and told him that he would not be going to the hospital because they already knew he had a broken foot and was scheduled for surgery that week.

-2-

Plaintiff had surgery on July 16, 2014, and following surgery, the surgeon instructed Plaintiff not to place any pressure on his ankle.  Plaintiff was returned to KCF and was again placed in segregation.

On July 21, 2014, Plaintiff was told to pack up because he was being transferred. While he was packing, Plaintiff asked Defendant Menard about his missing legal duffel bag. Plaintiff was told to sign off on the missing property, but he refused.  Plaintiff's transfer was then cancelled.  The next day, Plaintiff asked Defendant Menard why his transfer had been cancelled, and Defendant Menard told him that it was because he had one more doctor's appointment.  Plaintiff complained that he needed to be in a handicap accessible facility and / or unit so that he could shower safely.  Defendant Menard laughed and told Plaintiff not to worry because he would be transferred.

Plaintiff was seen by his surgeon, who took x-rays and told Plaintiff that the left side of his ankle was not healing.  The doctor told Plaintiff to try not to put any pressure on his ankle. Plaintiff replied that he was being housed in segregation and was not allowed to have crutches or a wheelchair.  Plaintiff was finally transferred to the Chippewa Correctional Facility (URF) and was placed in a handicap accessible unit.  Plaintiff was seen on a couple of other occasions by the doctor, who stated that Plaintiff's ankle was not healing properly and referred Plaintiff to a doctor in Petoskey, Michigan, for further surgery.  Instead of being sent to a doctor in Petoskey, Plaintiff was sent to the G. Robert Cotton Correctional Facility in Jackson, Michigan.

Following his transfer, Plaintiff was seen by Dr. Tein at Allegiance Hospital.  Dr. Tein took x-rays and a MRI and told Plaintiff that he had to have another surgery in order to repair his ankle.  Dr. Tein performed surgery in November of 2014, and told Plaintiff to stay off his ankle.

Plaintiff states that as of the date of his complaint, he continued to be seen by Dr. Tein and to receive physical therapy for his ankle.

Plaintiff claims that Defendants violated his Eighth and Fourteenth Amendment rights when they kept him in administrative segregation for 32 days while he was injured, which denied him access to crutches, a wheelchair, and a handicap accessible shower. Because of this deprivation, Plaintiff exacerbated his injury and required a second surgery to repair Plaintiff's fractured ankle. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

-4-

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891

F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Olson and Heyns were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Olson and Heyns had in this action involved the denial of administrative grievances or the failure to act. Defendants Olson and Heyns cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).

Accordingly, the Court concludes that Plaintiff's claims against Defendants Olson and Heyns are properly dismissed for lack of personal involvement.

The court notes that upon initial review, it appears that Plaintiff's claims against Defendant Menard are nonfrivolous and are not properly dismissed.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Olson and Heyns will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant Menard.

An Order consistent with this Opinion will be entered.


Dated: October 15, 2015                              /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE